UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
Mervat Soliman,

        Plaintiff,

 -against-

The City of New York, New York Police Officers
John Does 1-3,

        Defendants.
------------------------------------------------------------------------X

Docket No.: 15-cv-05310
(PKC) (RER)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

  Plaintiff, MERVAT SOLIMAN by and through her attorneys, THE ABOUSHI LAW FIRM, PLLC, complaining of the Defendants, respectfully allege, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought by Plaintiff, for the forcible removal of her religious garments for a public photograph taken during post arrest processing without accommodating her religious obligations.

2. Plaintiff brings this action for relief against the Defendants and for monetary damages against the Defendants to redress the violation of Plaintiff's civil and religious rights under the United States Constitution.

3. A Notice of Claim was filed and served on March 27, 2015 and a 50-h was subsequently held on August 4, 2015.

## JURISDICTION

4. This action is brought pursuant to 42 U.S.C. § 1983 and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

1

## VENUE

5. Venue is proper in the Eastern District of New York under 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in the Eastern District.

## JURY DEMAND

6. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

7. Plaintiff is a resident of the county of Queens in the State of New York.

8. Defendant, City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant City of New York maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

10. That at all times hereinafter mentioned, Individual Defendants, New York Police Officers John Does 1-3 ("Police Officer(s)") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. Plaintiff will amend this complaint to name the Defendant "John Doe" Police Officers as their identities can be established to a reasonable certainty.

12. That at all times relevant to this action, the Defendant Police Officers either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

13. Each and all of the acts of the Defendant Police Officers alleged herein were done by said Defendants while acting within the scope and in furtherance of their employment by Defendant City of New York.

## STATEMENT OF FACTS

14. Plaintiff is an observant Muslim woman and she dawns the Hijab, a veil that covers her hair, as part of her religious obligations.

15. On January 7, 2015 Plaintiff was parking her vehicle in front of her home in Ridgewood NY, when her neighbor Faith Harrison ("Harrison") and her daughter, SV, began harassing her.

16. Plaintiff filed numerous police reports against said parties for consistent harassment and assault and police officers have refused to follow up with reports and make arrest.

17. Plaintiff also made several complaints via 311 regarding SV's and Harrison's bigotry and racially motivated harassment and assaults and the City failed to pursue said complaints and stop said harassments.

18. Plaintiff contacted the police regarding SV and Harrison spitting at her, hitting her and verbally assaulting her on prior occasions and Police Officers at the 104 Precinct consistently refused to investigate her claims and arrest SV and/or Harrison.

19. On January 7th, Plaintiff's husband saved her a parking spot. As Plaintiff pulled up to park her car, Harrison pulled into the spot and gave her the middle finger and cursed at Plaintiff calling her an asshole, terrorist and told her to go back to her country.

20. Harrison then got out of her car and approached Plaintiff's vehicle while she continued to verbally abuse and berate her. Plaintiff then got out of her car and Harrison pushed her.

21. Plaintiff's son then came out of the home because he heard his mother scream. SV then came out of her home and punched Plaintiff in the face and chest. Plaintiff blacked out from the punch and needed medical attention.

22. Harrison went to her car and upon information and belief, called the police. Approximately 4 officers appeared at the premise including but not limited to Officer Jared Ock.

23. The officers observed Plaintiff lying on the ground and inquired as to her injuries. Plaintiff's son informed the officers that Harrison and SV pushed and punched his mother in the face and chest.

24. An ambulance was called and EMT placed Plaintiff in the ambulance. While being placed in the Ambulance, an officer told the EMT that Plaintiff was faking it and she did not need medical attention and she was a criminal.

25. Before entering the ambulance, a Police Officer removed Plaintiff's Hijab.

26. Plaintiff asked the EMT and the Officer where her Hijab was and stated she needed something to cover her hair.

27. The EMT and a Police officer refused to give her something to cover her hair and did not return her Hijab to her.

4

28. A Police officer then handcuffed Plaintiff via her hands and her feet. The Police officer then berated Plaintiff screaming that she was a fake and was wasting everyone's time and that he would make her pay for it. The Police officer also told the EMT that nothing had happened to Plaintiff and that she was just trying to avoid the arrest.

29. Plaintiff was taken to Wycoff Hospital. Upon arriving to the hospital, Plaintiff was aggressively handled by the escorting Police officer and was shoved into her room by him.

30. While there, Plaintiff requested something to cover her hair with. A Nurse brought her a pillowcase and Plaintiff was permitted to cover her hair.

31. The Police officer tightened the handcuffs on Plaintiff's hand and refused to loosen it to allow movement of her wrist.

32. At one point Plaintiff asked to use the restroom and the Police officer refused. For several hours the Police Officer continued to refuse Plaintiff permission to use the restroom. Upon the pleading of hospital staff, Plaintiff was permitted to use the restroom.

33. A male officer standing outside her room refused to permit Plaintiff to completely shut the bathroom door. He then began banging on the bathroom door while Plaintiff was inside. The male officers demanded a nurse barge in on Plaintiff and pull her out of the bathroom and a Nurse did just that. She barged in on Plaintiff with her pants down and told her she had to leave the restroom. Plaintiff was violated and exposed.

34. Around 8:00 P.M. Plaintiff was discharged and transported to the 104 precinct. Plaintiff was searched by a Police officer who forced her to remove her jacket and made her cut the collar of her shirt with a scissor.

35. The Police officer shoved, pushed and aggressively handled Plaintiff. Plaintiff suffers from Rheumatoid Arthritis, diabetes and hypertension, which she informed the arresting and processing officers of said ailments.

36. In 20-degree weather, Plaintiff was neither given a blanket nor was she permitted to wear her jacket. There was no heat in the holding cell where Plaintiff was kept.

37. Plaintiff requested to contact her family to let them know where she was several times throughout the ordeal and her requests were denied.

38. Plaintiff was photographed while wearing the pillowcase covering her head. Plaintiff requested something to cover her neck and chest, which must also be covered pursuant to her religious obligation and the Police officer refused to permit her to cover said areas.

39. Plaintiff was placed in a cell for several hours without food, heat or her Hijab. Once Plaintiff began to shiver from how cold she was, an Officer told her to go to the bathroom and wash her hands with hot water.

40. After midnight on January 8th Plaintiff went to the bathroom and felt dizzy. She informed the Police Officer she was not feeling well. She washed her face and drank water but continued to feeling faint. In an effort to warm herself, she wrapped bathroom tissue around her neck and shoulders. The Police Officers permitted her to do so and did not force her to remove the tissue.

41. Upon exiting the bathroom Plaintiff experienced chest pain. She informed the Police Officers that she did not feel well and that her chest felt tight and she could not breathe. The Police Officer called her a fake and a liar and attempted to shove Plaintiff towards the cell. Plaintiff fainted and she was taken back to Wycoff hospital for evaluation.

42. Upon being seen by a doctor and cleared for discharge, Plaintiff was taken to central booking for further processing. While at Central Booking, Plaintiff was given her jacket and Hijab back. Plaintiff put her Hijab on while in her cell.

43. Police Officers forced Plaintiff to remove her Hijab again while in Central Booking.

44. Plaintiff informed the Police Officers of her religious obligation to which they responded "this is America, we don't care".

45. Plaintiff pleaded with the Police Officers to at least permit a female officer to photograph her or that she be photographed in a private room. Both requests were denied. Instead Plaintiff's photograph was taken in the well of central booking in plain sight of multiple male police officers and staff.

46. The City of New York and the New York Police Department knew or should have known of the discrimination and violation of constitutional rights in forcing Plaintiff to remove her religious attire in the presence of men. Furthermore, after becoming aware several times of the religious sensitivity of the situation on both occasions, The City of New York and the New York Police Department failed to take any preventative measures to minimize the damage to Plaintiff by forcing her to remove her Hijab in the presence of men and in failing to provide any accommodations to her religious restrictions.

47. The City of New York and the New York Police Department knew or should have known of the discrimination and violation of constitutional rights in forcing Plaintiff to remove her religious headscarf without accommodations.

48. There is no legitimate governmental interest in compelling the removal of religious garments/gear during the time of processing post arrest including mug shots and fingerprinting without providing accommodations for religious restrictions.

49. Defendant Police Officers had no legitimate or cognizable reason for aggressively arresting Plaintiff or on subjecting her to degrading conditions of confinement that included (1) Inadequate Nutrition, (2) Extreme Temperatures and (3) Deprivation of Sleep.

50. At no point before, during, or after the Defendant Police Officer's attack of Plaintiff throughout her arrest, transport to the hospital, stay at the hospital, transport to central booking and stay at central booking, did any of the other Defendant Police Officer's attempt to stop, obstruct, or otherwise prevent Defendant Police Officer from assaulting, berating, discriminating and violating Plaintiff.

51. The individual Defendants acted with deliberate indifference and knew and disregarded the excessive risk to Plaintiff's health and safety as she repeatedly warned them that she was experiencing shortness of breath, her chest was tight and she had trouble breathing.

52. The individual Defendants acted with deliberate indifference to the challenged conditions of her confinement which including aggressively pushing Plaintiff during her first transport to and from Wycoff Hospital, refusing to permit her to cover her hair while at Wycoff Hospital, refusing to permit her to use the bathroom until several hours while at Wycoff Hospital, imposing on her privacy to use the restroom with the door closed a in forcing Plaintiff out of the bathroom before she finished using it.

53. The individual Defendants were aware of the challenged conditions based upon their own observations, which included seeing Plaintiff shivering and wrapping herself in toilet paper in an attempt to warm herself and Plaintiff's complaints about the conditions.

54. The individual Defendants were also aware of the challenged conditions based upon their own observations in barging on Plaintiff while she was using the bathroom.

55. The individual Defendants were aware of the challenged conditions based upon Plaintiff's complaints throughout the entirety of her pretrial confinement.

56. As a result of the degrading conditions of her confinement, Plaintiff was visibly injured and required medical attention.

57. As a result of the foregoing, Plaintiff sustained, *inter alia*, physical injuries, mental injuries, emotional distress, embarrassment, humiliation, and deprivation of her constitutional rights.

58. As a result of the Defendants' constitutionally violative conduct, Plaintiff Mervat Soliman demands a judgment from Defendants in a sum of money to be determined at trial.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

59. Plaintiff repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

60. All of the aforementioned acts of the Defendant Police Officers, their agents, servants and employees, were carried out under the color of state law.

61. The aforementioned individual Defendants in their capacities as officers carried out the acts complained of, with all of the actual and/or apparent authority attendant thereto.

62. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

63. Defendants have deprived Plaintiff Mervat Soliman of her liberty without due process of law by failing to provide adequate religious accommodations to prevent violations of Plaintiff's religious freedom.

64. The Fourteenth Amendment to the United States Constitution, which prohibits the deprivation of "life, liberty or property without due process of law", guarantees to each civilian in state custody the substantive right to be free from harm and from undue restraints on their liberty.

65. Plaintiff Mervat has been harmed by Defendants' violation of her rights under the Fourteenth Amendment. Plaintiff Mervat's harms include, but are not limited to, psychological and emotional damage during the course of her confinement and interaction with the Police Officers on the subject dates.

66. As a result of the above constitutionally impermissible conduct, Plaintiff Mervat was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to her reputation and standing within her community.

67. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**UNCONSTITUTIONAL CONDITIONS OF PRETRIAL CONFINEMENT UNDER 42 U.S.C. § 1983**

68. Plaintiff repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

69. Defendants have deprived Plaintiff of her liberty without due process of law under the Fourteenth Amendment to the United States Constitution as she was subject to conditions that combined rise to constitutional violations. These conditions are as follows: (1) Inadequate Nutrition as Plaintiff was denied food and water for the duration of her

confinement; (2) Extreme Temperatures as Plaintiff was not provided heat nor was she permitted to wear her jacket in below 20 degree weather; and (3) Deprivation of Sleep as a result of Plaintiff lacking nutrition, warmth and subject to intimidation by Police Officers in the precinct she was denied sleep and throughout her first stay and transport to and from Wycoff Hospital.

70. The aforementioned conditions were sufficiently serious to constitute objective deprivations of the right to due process as the conditions combined posed an unreasonable risk of serious damage to Plaintiff's health as was evidenced in the conditions resulting in her fainting at the precinct which prompted her transport to Wycoff Hospital for evaluation.

71. The Defendant Police Officers acted intentionally in to impose the aforementioned three (3) conditions upon Plaintiff and recklessly failed to act with reasonable care to mitigate the risk that the conditions posted event they the Defendants Police Officer's knew that the conditions posed an excessive risk to her health or safety.

72. For the duration of her confinement, Plaintiff informed the officers of the aforementioned conditions. The Defendant Police Officers forced Plaintiff to wash her hands with hot water to keep warm instead, refused to permit her to wear her jacket, watched as she wrapped herself in toilet paper to keep warm and ignored her complaints that her chest was tight and she could not breathe, refused to permit Plaintiff to use the Bathroom in privacy, refused to permit her to wear Hijab while at Wycoff Hospital and refused to permit Plaintiff to use the restroom for several hours without basis. In response to her complaints challenging the conditions of her confinement, Plaintiff was

intimidated, berated and degraded by Defendant Police Officers who continued to accuse her of faking her complaints.

73. Plaintiff has been harmed by Defendants' violation of her rights under the Fourteenth Amendment. Plaintiff's harms include, but are not limited to, psychological and emotional damage during the course of her confinement and interaction with the NYPD on said date.

74. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to her reputation and standing within her community.

75. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff Mervat Soliman request that this Court grant the following relief:

a. Award Plaintiff compensatory and punitive damages in an amount to be determined at trial against Defendants for violations of federal constitutional rights;

b. Retain jurisdiction in this case until the unlawful conditions, practice, policies, acts and omissions complained of herein no longer exist and this Court is satisfied that they will not recur;

c. Award Plaintiff the costs of this action, including reasonable attorneys' fees and

d. Grant such other and further relief as this Court deems just and proper.

Dated: New York, NY
      May 15, 2017

                                           Respectfully Submitted,
                                           _____/s/_____

THE ABOUSHI LAW FIRM, PLLC
By: Tahanie A. Aboushi, Esq. (TA6529)
*Attorneys for Plaintiff*
1441 Broadway Suite 5036
New York, NY 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
tahanie@aboushi.com